IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA


IN THE MATTER OF:

Inspection of the workplace                     Case No. 8:19 MJ 138
located at and near

87725 State Highway 7
Ainsworth, Nebraska 69210

under the control or custody of

STEP FIVE, INC. d/b/a
DANIELS MANUFACTURING CO.

**APPLICATION FOR ADMINISTRATIVE SEARCH WARRANT UNDER
THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

Brian Elmore, a duly authorized Compliance Officer of the Omaha Area Office,

Occupational Safety and Health Administration, United States Department of Labor, hereby

applies for an administrative search warrant, pursuant to section 8(a) of the Occupational

Safety and Health Act of 1970, 29 U.S.C.A. §§ 651-678, 657(a) (West 2012), hereinafter

referred to as the Act, for the inspection, investigation and search of the Step Five, Inc.

d/b/a Daniels Manufacturing Co. workplace located at 87725 State Highway 7, Ainsworth,

Nebraska 69210 and described as the workplace where Step Five, Inc. d/b/a Daniels

Manufacturing Co. is believed to be engaged in farm equipment manufacturing.

1.      The authority for issuance of the administrative search warrant is section

8(a) of the Act and Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816 (1978).

1

2.　　　Sections 8(a)(1) and 8(a)(2) of the Act specifically authorize the Secretary of Labor to make inspections and investigations at any reasonable time, at any plant, factory, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer.

3.　　　Sections 8(a)(1) and 8(a)(2) of the Act are implemented in part by OSHA Instruction CPL 02-00-160, Field Operations Manual (FOM), (hereinafter CPL 02-00-160), Chapter 2, attached hereto as Exhibit A and incorporated herein, which directs that programmed inspections be scheduled based on objective or neutral selection criteria, according to national scheduling plans or under local, regional, or national special emphasis programs.  CPL 02-00-150, Exhibit A, Chapter 2, para. IV.H.3, p. 2-6.  Special Emphasis Programs provide for programmed inspections of establishments in industries with potentially high injury or illness rates.  Exhibit A, CPL 02-00-160, Chapter 2, para. VI.C.1, p. 2-8.  OSHA develops National Emphasis Programs ("NEPs")  to focus outreach efforts and inspections on specific hazards in workplaces nationwide.  Exhibit A, CPL 02-00-160, Chapter 2, para. VI.D, p. 2-9.

4.　　　Beginning in 2015, OSHA developed and implemented the National Emphasis Program on Amputations, CPL 03-00-019, attached hereto as Exhibit B and incorporated herein, to identify and to reduce workplace machine and equipment hazards which are causing or likely to cause amputations.  An Amputation is defined as a traumatic loss of limb or other external body part.  Exhibit B, CPL 03-00-019, para. I, p. 1.  The NEP applies to general industry workplaces, where any machinery and equipment that are likely to cause amputations are present.  Exhibit B, CPL 03-00-019, para. VIII, p. 3.

5.　　　The NEP provides that each Area Office will prepare a master list of

2

establishments within its jurisdiction from the 80 covered NAICS codes listed in the

targeting methodology of the NEP.  Exhibit B at para. XVII, pp. 8-10.  The NEP also sets

forth guidance in Appendix A of the type of machinery and equipment that could be

sources of amputations at the general industry workplaces covered by the NEP.

*See* Exhibit B, CPL 03-00-019, Appendix A: Machinery and Equipment, at p. A-1.  Area

Offices may add to the master list general industry establishments where amputation

injuries or fatalities related to machinery and equipment have occurred in the last five

years.  Exhibit B, CPL 03-00-019, at para. X.B.2, p. 4.  The Area Office may delete

establishments known to be out of business or not likely to have the targeted machinery

or equipment.  Establishments, other than those where amputations are known to have

occurred, having had a comprehensive safety inspection within the previous 24 months,

are also deleted from the list.  Exhibit B, CPL 03-00-019, at para. X.B.3, p. 4.

Establishments with ten or fewer employees will also not be scheduled for an inspection.

Exhibit B, CPL 03-00-019, at para. X.B.1, p. 4.

      6.     Establishments on the master list are then inspected in any order, either in

entirety in the random order provided or in cycles created in random number order.

Exhibit B, CPL 03-00-019, at para. X.B. Cycle Generation para.1, p. 4.  Once a cycle is

created, the establishments may be inspected in any order.  However, the entire cycle

must be finished prior to beginning another cycle.  Once a cycle is complete, the Area

Office selects the next ten establishments from the randomized list as its next cycle.

Exhibit B, CPL 03-00-019, at para. X.B. Cycle Generation para. 3, pp. 4-5.

      7.     Step Five, Inc. d/b/a Daniels Manufacturing Co. is an establishment within

the jurisdiction of the Omaha Area Office.  Step Five, Inc. d/b/a Daniels Manufacturing Co.

has an NAICS code of 333111, which is one of the 80 NAICS codes covered by the NEP.

The Omaha Area Office completed one cycle in FY 2019 under the NEP, CPL 03-00-019. The Omaha Area Office then compiled Cycle 2, identifying ten additional establishments. Step Five, Inc. d/b/a Daniels Manufacturing Co. was an establishment selected for inspection in Cycle 2.  Step Five, Inc. d/b/a Daniels Manufacturing Co. was not deleted from the cycle list, because the establishment has more than ten employees and has not been inspected within the last 24 months.

8.     On February 5, 2019, Compliance Officer Brian Elmore went to the establishment located at 87725 State Hwy 7, Ainsworth, Nebraska and requested permission to make an inspection.  He was denied permission to do so by Danny Daniels, Owner.

9.     It is requested that the warrant authorize a partial inspection of the farm equipment manufacturing operation under the custody and control of Step Five, Inc. d/b/a Daniels Manufacturing Co, including all relevant records, files, and papers.  At the opening conference, the CSHO will verify with the employer whether any machinery and equipment that could cause amputations are present at the workplace.  If machinery and equipment that could cause amputations are present, the CSHO will conduct an inspection, with particular attention to employee exposure to nip points, pinch points, shear points, cutting actions, and other points of operation.  OSHA 300 logs and 301 incident reports for current and previous three years will also be reviewed during the inspection.  The inspection will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including the questioning privately of any employee or agent, and the taking of photographs, environmental samples, including the use of personal sampling equipment, and measurements, when necessary.  The Compliance Officer's credentials will be presented,

4

and the inspection will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness. The Compliance Officer may expand the inspection beyond those machines if other hazards or violations are observed during the walk-around or are documented in the OSHA 300 logs.

10.     Any information, including photographs and environmental samples, obtained in connection with the inspection and which is designated to be a trade secret as defined in 18 U.S.C.A. § 1905, shall be considered confidential as provided in section 15 of the Act, 29 U.S.C.A. § 664.


I declare under penalty of perjury that the foregoing is true and correct.

Brian Elmore
Compliance Officer
Occupational Safety and Health Administration
United States Department of Labor


Subscribed and sworn to before me in my presence on this 14 day of March, 2019.

MICHAEL D. NELSON
United States Magistrate Judge

5

JOSEPH P. KELLY
United States Attorney
District of Nebraska

LAURIE A. KELLY, MA Bar 557575
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3081
Email:  laurie.kelly@usdoj.gov


OF COUNSEL:

Kate S. O'Scannlain
Solicitor of Labor

Christine Z. Heri
Illinois Bar #6204656
Regional Solicitor

Charles W. Gordon
Acting Associate Regional Solicitor
Missouri Bar # 32985

Susan J. Willer
Attorney
OK Bar #017798

Office of the Solicitor
2300 Main Street
Suite 1020
Kansas City, MO 64108
Tel:  (816) 285-7260
Fax:  (816) 285-7287

Attorneys for R. Alexander Acosta
Secretary of Labor
United States Department of Labor

6

# Chapter 2

# PROGRAM PLANNING

I.   Introduction.

OSHA's mission is to assure the safety and health of America's working men and women by promulgating and enforcing standards and regulations; providing training, outreach, and education; establishing partnerships; and encouraging continual improvement in workplace safety and health as well as the development of comprehensive safety and health management systems. Effective and efficient use of resources requires careful, flexible planning. In this way, the overall goal of hazard abatement and employee protection is best served.

II.   Area Office Responsibilities.

A.   Providing Assistance to Small Employers.

1.   In 1996, the Congress passed the Small Business Regulatory Enforcement Fairness Act (SBREFA) to respond to the concern expressed by the small business community that Federal regulations were too numerous and complex, and that small business needed special assistance in understanding and complying with those regulations.

2.   SBREFA requires all federal agencies regulating small businesses to have in place programs to provide guidance and compliance assistance. These programs must contain procedures to answer inquiries by small entities (small businesses). These programs also provide information on and advice about compliance with the statutes and regulations; interpretations; and applications of the law to specific sets of facts supplied by the small entity.

NOTE:  See CPL 02-00-121, *Providing Assistance to Smaller Employers*, March 12, 1998.

B.   Area Office Outreach Program.

The Area Director or designee will ensure that the Area Office maintains an outreach program appropriate to local conditions and the needs of the service area. The plan may include Regional and National Office support services, compliance assistance services including assistance in developing compliance safety and health management systems, training and education services, referral services, cooperative programs, abatement assistance, and technical services.

C.   Responding to Requests for Assistance.

All requests from employers or employees for compliance information or assistance shall receive timely, accurate, and helpful responses from OSHA. See the section on Information Requests in this chapter for additional information.

III.   OSHA Cooperative Programs Overview.

OSHA offers a number of avenues for businesses and organizations to work cooperatively with the Agency. Compliance Officers should discuss the various cooperative programs with employers.

A.   Voluntary Protection Programs (VPP).

EXHIBIT A

The Voluntary Protection Programs (VPP) are designed to recognize and promote effective safety and health management. A hallmark of VPP is the principle that management, labor, and OSHA can work together in pursuit of a safe and healthy workplace. VPP participants are employers who have successfully designed and implemented a health and safety management system at their worksites, and are exempt from programmed inspections.

NOTE: See CSP 03-01-003, *Voluntary Protection Programs (VPP): Policies and Procedures Manual*, April 18, 2008, for additional information.

B.  On-site Consultation Program.

OSHA On-site Consultation Programs are available in all 50 states as well as the District of Columbia, Guam, Northern Marianas Islands, Puerto Rico and the Virgin Islands under Section 21(d) and 23(g) agreements with Federal OSHA or under State Plans approved by OSHA.

1.  The state On-site Consultation Program offers a variety of services at no cost to employers. These services include assisting in the development and implementation of an effective safety and health management system, and offering training and education to the employer and employees at the worksite. Small businesses in high-hazard industries or those involved in hazardous operations receive priority.

2.  The State On-site Consultation Program is separate from OSHA's enforcement efforts. Under On-Site Consultation Programs, no citations are issued, nor are penalties proposed.

C.  Safety and Health Achievement Recognition Program (SHARP).

Another program that recognizes employers' efforts to create a safe workplace and exempts them from programmed inspections is the Safety and Health Achievement Recognition Program (SHARP). This program is administered by the State On-site Consultation Program but is funded under Section 21(d) of the Act.

SHARP is designed to provide incentives and support to those employers that implement and continuously improve effective safety and health management system(s) at their worksite. SHARP participants are exempted from OSHA programmed inspections.

NOTE: See CSP 02-00-002, *Consultation Policies and Procedures Manual*, January 18, 2008, for additional information.

D.  Strategic Partnerships.

Organizations can enter into Strategic Partnerships with OSHA to address specific safety and health issues. In these partnerships, OSHA enters into extended, voluntary, cooperative relationships with groups of employers, employees, and employee representatives (sometimes including other stakeholders, and sometimes involving only one employer) in order to encourage, assist, and recognize efforts to eliminate serious hazards and to achieve a high level of worker safety and health.

NOTE: See CSP 03-02-003, *OSHA Strategic Partnership Program for Worker Safety and Health*, November 6, 2013, for additional information.

E.  Alliance Program.

Through the Alliance Program, OSHA works with groups committed to worker safety and health to prevent workplace fatalities, injuries, and illnesses. These groups include unions, consulates, trade or professional organizations, businesses, faith- and community-

based organizations, and educational institutions. OSHA and the groups work together to develop compliance assistance tools and resources, share information with workers and employers, and educate workers and employers about their rights and responsibilities. Alliance Program participants do not receive exemptions from OSHA inspections or any other enforcement benefits.

NOTE: See CSP 04-01-001, *OSHA Alliance Program*, June 10, 2004, for additional information.

NOTE: See Section VI.H., of this chapter, Enforcement Scheduling and Interface with Cooperative Program Participants, for additional information.

IV.    Enforcement Program Scheduling.

   A. General.

   1. OSHA's priority system for conducting inspections is designed to allocate available OSHA resources as effectively as possible to ensure that maximum feasible protection is provided to working men and women. The Area Director or designee will ensure that inspections are scheduled within the framework of this chapter, that they are consistent with the objectives of the Agency, and that appropriate documentation of scheduling practices is maintained.

   2. The Area Director or designee will also ensure that OSHA resources are effectively distributed during inspection activities. If an inspection is of a complex nature, the Area Director or designee may consider utilizing additional OSHA resources (e.g., the Health Response Team). In other circumstances, the use of outside resources may aid the Area or District Office to deploy available resources more effectively. The Area Office will retain control of the inspection.

   B. Inspection Priority Criteria.

   Generally, priority of accomplishment and of assigning staff resources for inspection categories is as shown in Table 2-1 below:

   **Table 2-1: Inspection Priorities**

   | Priority | Category |
   |----------|----------|
   | First | Imminent Danger |
   | Second | Fatality/Catastrophe (NOTE) |
   | Third | Complaints/Referrals |
   | Fourth | Programmed Inspections |

   NOTE: OSHA Area Offices will determine the inspection priority of a **catastrophe** using the Memorandum entitled, "*Interim Enforcement Procedures for New Reporting Requirements under 29 C.F.R. 1904.39*", dated December 24, 2014, or unless superseded by future agency-approved correspondence.

   1. Efficient Use of Resources.

   Deviations from this priority list are allowed so long as they are justifiable, lead to the efficient use of resources, and promote effective worker protection. An example of such a deviation would be when the Agency, Regional Administrator or an Area Director commits a certain percentage of resources to programmed Special Emphasis Program (SEP) inspections such as a National Emphasis Program (NEP), a Regional

Emphasis Program (REP), or Local Emphasis Program (LEP). Inspection scheduling deviations must be documented in the case file.

2. Follow-up Inspections.

In cases where follow-up inspections are necessary, they shall be conducted as promptly as resources permit. In general, follow-up inspections shall take priority over all programmed inspections and any unprogrammed inspection in which the hazards are anticipated to be other-than-serious.

NOTE: See Chapter 7, Post-Citation Procedures and Abatement Verification, for additional information.

3. Monitoring Inspections.

When a monitoring inspection is necessary, the priority is the same as for a follow-up inspection.

NOTE: See Chapter 7, Post-Citation Procedures and Abatement Verification, for additional information.

4. Employer Information Requests.

Contacts for technical information initiated by employers or their representatives will not trigger an inspection, nor will such employer inquiries protect the requesting employer against inspections conducted pursuant to existing policy, scheduling guidelines and inspection programs established by the Agency.

5. Reporting of Imminent Danger, Catastrophe, Fatality, Amputations, Accidents, Referrals or Complaints.

The Area Director or designee will act in accordance with established inspection priority procedures.

NOTE: See Section V., of this chapter, Unprogrammed Activity – Hazard Evaluation and Inspection Scheduling, for additional information.

C. Effect of Contest.

If an employer has contested a citation and/or a penalty from a previous inspection at a specific worksite, and the case is still pending before the Review Commission, the following guidelines apply to additional inspections of the employer at that worksite:

1. If the employer has contested the penalty only, the inspection will be scheduled as if there were no contest.

2. If the employer has contested the citation itself or any items therein, then programmed and unprogrammed inspections will be scheduled, but all violative conditions under contest will be excluded from the inspection unless a potential imminent danger is involved.

NOTE: See Section IV.B., Inspection Priority Criteria, of this chapter for additional information.

D. Enforcement Exemptions and Limitations.

1. In providing funding for OSHA, Congress has consistently placed restrictions on enforcement activities for two categories of employers: small farming operations and small employers in low-hazard industries. Congress may place exemptions and limitations on OSHA activities through the annual Appropriations Act.

2. Before initiating an inspection of an employer in these categories, the Area Office will evaluate whether the Appropriations Act for the fiscal year would prohibit the

2-4

inspection. Where this determination cannot be made beforehand, the CSHO will determine the status of the small farming operation or a small employer in a low-hazard industry upon arrival at the workplace. If the prohibition applies, the inspection shall immediately be discontinued.

NOTE: See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998, for additional information.

E. Preemption by Another Federal Agency.

1. Section 4(b)(1) of the Act states that the Act does not apply to working conditions over which other federal agencies exercise statutory responsibility "to prescribe or enforce standards or regulations affecting occupational safety or health." The determination of preemption by another federal agency is, in many cases, a highly complex matter.

2. If a question arises, usually upon receipt of a complaint, referral, or other inquiry, consult the list of Memorandums of Understanding (MOU) on the OSHA website to determine if the issue has been previously addressed. A MOU is an agreement created to address/resolve coverage issues and to improve the working relationships between other federal agencies and organizations regarding employee safety and health.

3. At times, an inspection may have already begun when the coverage jurisdiction question arises. Any such situations will be brought to the attention of the Area Director, Regional Solicitor, or designee as soon as they arise, and dealt with on a case-by-case basis.

4. Two examples of MOUs include the following:

a. Mine Safety and Health Administration - Interagency Agreement between the Mine Safety and Health Administration and OSHA, dated March 29, 1979.

b. United States Coast Guard/U.S. Department of Transportation - Authority of Coast Guard and OSHA regarding enforcement of safety and health standards aboard vessels inspected and certified by the Coast Guard, dated March 4, 1983.

F. United States Postal Service.

1. The Postal Employee Safety Enhancement Act of 1998 applies the Act to the U.S. Postal Service in the same manner as the Act applies to a private sector employer.

2. All State Plan States elected not to cover the U.S. Postal Service. Thus, Federal OSHA retains authority to cover the U.S. Postal Service nationwide. Federal coverage in State Plan States encompasses U.S. Postal Service employees and contract employees engaged in U.S. Postal Service mail operations. Coverage includes contractor-operated facilities engaged in mail operations and postal stations in public or commercial facilities. State Plan States continue to exercise jurisdiction over all other private sector contractors working on U.S. Postal Service sites who are not engaged in U.S. Postal Service mail operations, such as building maintenance and construction employees. (See the Final Rule on *State Plans Coverage of the U.S. Postal Service* (65 FR 36618, June 9, 2000)).

3. Violations documented during inspections initiated at a U.S. Postal Service site will be cited with penalties in accordance with the FOM and other applicable OSHA policies for the private sector.

NOTE: See CPL 02-00-122, *Enforcement Guidance for the U.S. Postal Service*, dated April 16, 1999, for additional information.

G. Home-Based Worksites.

    1. The agency will not perform any inspections of employees' home offices. A home office is defined as office work activities in a home-based setting/worksite (e.g., filing, keyboarding, computer research, reading, writing) and may include the use of office equipment (e.g., telephone, facsimile machine, computer, scanner, copy machine, desk, file cabinet).

    2. OSHA will only conduct inspections of other home-based worksites, such as home manufacturing operations, when it receives a complaint or referral alleging that a violation of a safety or health standard exists that threatens physical harm, that an imminent danger is present, or that there was a work-related fatality.

    NOTE: See CPL 02-00-125, *Home-Based Worksites*, February 25, 2000, for additional information.

H. Inspection/Investigation Types.

    1. Unprogrammed.

    Inspections scheduled in response to alleged hazardous working conditions identified at a specific worksite are classified as unprogrammed. This type of inspection responds to:

    a. Imminent Dangers;

    b. Fatalities/catastrophes;

    c. Complaints; and

    d. Referrals.

    e. It also includes follow-up and monitoring inspections scheduled by the Area Office.

    NOTE: This category includes all employers/employees directly affected by the subject of the unprogrammed inspection activity, and is especially applicable on multi-employer worksites.

    NOTE: Not all complaints and referrals qualify for an inspection. See Chapter 9, Complaint and Referral Processing, for additional information.

    NOTE: See CPL 02-00-124, *Multi-Employer Worksite Citation Policy*, December 10, 1999, for additional information.

    2. Unprogrammed Related.

    Inspections of employers at multi-employer worksites whose operations are not directly addressed by the subject of the conditions identified in a complaint, accident, or referral are designated as unprogrammed related.

    An example would be: A trenching inspection conducted at the unprogrammed worksite where the trenching hazard was not identified in the complaint, accident report, or referral.

    3. Programmed.

    Worksite safety and health inspections that have been scheduled based upon objective or neutral selection criteria are programmed inspections. The worksites are selected according to national scheduling plans or under local, regional, and national special emphasis programs.

    4. Program Related.

Inspections of employers at multi-employer worksites whose activities were not included in the programmed assignment, such as a low injury rate employer at a worksite where programmed inspections are being conducted for all high rate employers.

V.     Unprogrammed Activity – Hazard Evaluation and Inspection Scheduling.

Enforcement procedures relating to unprogrammed activity are located in subject specific chapters of this manual:

➤ Imminent Danger, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

➤ Fatality/Catastrophe, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

➤ Emergency Response, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

➤ Complaint/Referral Processing, see Chapter 9, Complaint and Referral Processing.

➤ Whistleblower Complaints, see Chapter 9, Complaint and Referral Processing.

➤ Follow-ups and Monitoring, see Chapter 7, Post-Citation Procedures and Abatement Verification.

VI.     Programmed Inspections.

A.   Scheduling for Construction Inspections.

Due to the mobility of the construction industry, the transitory nature of construction worksites and the fact that construction worksites frequently involve more than one employer, inspections are scheduled from a list of construction worksites rather than construction employers. The OSHA National Office will provide to each Area/District Office a randomly selected list of construction projects from identified or known covered active projects. This list will contain the projected number of sites that the field office has reported it plans to inspect during the next month. Projects are selected in accordance with the inspection schedule for construction.

NOTE: See CPL 02-00-141, *Inspection Scheduling for Construction*, July 14, 2006.

B.   Scheduling for Maritime Inspections.

Maritime inspection activities are covered in greater detail in Chapter 10, Section III., Maritime.

1.   Marine Cargo Handling Industry.

The marine cargo handling industry is made up of longshoring activities (i.e., cargo handing aboard vessels, 29 C.F.R. Part 1918) and activities within marine terminals (i.e., cargo handling ashore; 29 C.F.R. 1917). Because these activities are different, several scheduling methods are necessary. Consequently, marine cargo handling industry inspections can be scheduled as National Emphasis Programs (NEPs), Regional Emphasis Programs (REPs), Local Emphasis Programs (LEPs), or from lists developed in accordance with CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995.

NOTE: See CPL 02-00-154, *Longshoring and Marine Terminals "Tool Shed" Directive*, July 31, 2012, for more information.

2. Shipbreaking.

CPL-03-00-012, *OSHA's National Emphasis Program (NEP) on Shipbreaking*, November 4, 2010, describes policies and procedures to reduce or eliminate workplace hazards associated with shipbreaking operations.

Also, OSHA has entered into a *Memorandum of Agreement* on Interagency Coordination for Ship Scrapping (i.e., shipbreaking) between DOD/DOT/EPA/DOL-OSHA, November 16, 1999.

3. Shipyard Employment.

The shipyard employment industry is made up of several industrial activities and because these activities are different, several scheduling methods are necessary. Consequently, shipyard employment inspections can be scheduled under NEPs, REPs, LEPs, or from lists developed in accordance with CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995 and CPL 02-01-049, *Enforcement Guidance for Personal Protective Equipment (PPE) in Shipyard Employment*, November 4, 2010.

NOTE: See CPL 02-00-157, *Shipyard Employment "Tool Bag" Directive*, April 1, 2014, for more information.

C. Special Emphasis Programs (SEPs).

Special Emphasis Programs provide for programmed inspections of establishments in industries with potentially high injury or illness rates that are not covered by other programmed inspection scheduling systems or, if covered, where the potentially high injury or illness rates are not addressed to the extent considered adequate under the specific circumstances. SEPs are also based on potential exposure to health hazards. Special emphasis programs may also be used to develop and implement alternative scheduling procedures or other departures from national procedures. Special emphasis programs can include National Emphasis Programs, Regional Emphasis Programs and Local Emphasis Programs.

1. Identification of Special Emphasis Programs.

The description of the particular Special Emphasis Program shall be identified by one or more of the following:

a. Specific industry;

b. Trade/craft;

c. Substance or other hazard;

d. Type of workplace operation;

e. Type/kind of equipment; and

f. Other identifying characteristic.

2. Special Emphasis Program Scope.

The reasons for and the scope of a Special Emphasis Program shall be described; and may be limited by geographic boundaries, size of worksite, or similar considerations.

3. Pilot Programs.

National or local pilot programs may also be established under Special Emphasis Programs. Such programs may be conducted for the purpose of assessing the actual extent of suspected or potential hazards, determining the feasibility of new or experimental compliance procedures, or for any other legitimate reason.

D. <u>National Emphasis Programs (NEPs)</u>.

OSHA develops National Emphasis Programs to focus outreach efforts and inspections on specific hazards in a workplace.

E. <u>Local Emphasis Programs (LEPs) and Regional Emphasis Programs (REPs)</u>.

LEPs and REPs are types of special emphasis program in which one or more Area Offices of a Region participate. LEPs and REPs are generally based on knowledge of local industry hazards or local industry injury/illness experience. LEPs and REPs must be developed and approved when one or more Area Offices within a Region target inspections to a specific industry(s), hazard(s), or other workplace characteristic(s), e.g., as part of, or in conjunction with, a local initiative or problem-solving project. A list of LEPs may be found on the OSHA website under the Directorate of Enforcement Programs.

NOTE: See CPL 04-00-001, *Procedures for Approval of Local Emphasis Programs (LEPs)*, dated November 10, 1999, for additional information. Also, see Memorandum on *Procedures for Local and Regional Emphasis Programs*, dated December 3, 2014.

OSHA directives include topic specific scheduling procedures in addition to the general information provided in this section.

F. <u>Other Special Programs</u>.

The Agency may develop programs to cover special categories of inspections that are not covered under a Special Emphasis Program.

G. <u>Inspection Scheduling and Interface with Cooperative Program Participants</u>.

Employers who participate in voluntary compliance programs may be exempt from programmed inspections and eligible for inspection deferrals or other enforcement incentives. The Area Director or designee will determine whether the employer is actively participating in a Cooperative Program that would impact inspection and enforcement activity at the worksite being considered for inspection. Where possible, this determination should be made prior to scheduling the inspection.

Information regarding a facility's participation in the following programs should be available prior to scheduling inspection activity:

> ➢ VPP Program;
> ➢ Pre-SHARP and SHARP Participants;
> ➢ Consultation 90-Day Deferrals.

1. <u>Voluntary Protection Program</u>.

   a. <u>Regional VPP Manager Responsibilities</u>.

   The Regional VPP managers must keep Area Directors or their designees informed about VPP applicants and the status of participants in the VPP. This will prevent unnecessary scheduling of programmed inspections at VPP sites and ensure efficient use of resources. Area Directors or their designee should be informed:

   > ➢ That the site can be removed from the programmed inspection list. Such removal may occur no more than 75 days prior to the on-site evaluation;
   > ➢ Of the site's approval for the VPP program;
   > ➢ Of the site's withdrawal or termination from the VPP program; and

> ➤ If the Regional VPP Manager is the first person notified by the site of an event requiring enforcement, the VPP Manager must instruct the site to contact the appropriate Area Office.

b. Programmed Inspections and VPP Participation.

> ➤ Inspection Deferral. Approved sites must be removed from any programmed inspection lists for the duration of participation, unless a site chooses otherwise. The applicant worksite will be deferred starting no more than 75 calendar days prior to the commencement of its scheduled pre-approval on-site review.

> ➤ Inspection Exemption. The exemption from programmed inspections for approved VPP sites will continue for as long as they continue to meet VPP requirements. Sites that have withdrawn or have been terminated from VPP will be returned to the programmed inspection list, if applicable, at the time of the next inspection cycle.

c. Unprogrammed Enforcement Activities at VPP Sites.

When an Area Office receives a complaint, or a referral other than from the OSHA VPP on-site team, or is notified of a fatality, catastrophe, or other event requiring an enforcement inspection at a VPP site, the Area Director or designee must initiate the inspection following normal OSHA enforcement procedures.

> ➤ The Area Office must immediately notify the Regional VPP Manager of any fatalities, catastrophes or other incidents occurring at a VPP worksite that require an enforcement inspection; as well as of a referral or complaint that concerns a VPP worksite, including complaint inquiries that would receive a letter response. If the VPP is a national VPP, the National Office should be notified.

> ➤ If the Regional VPP Manager is the first person notified by the site of an event requiring an enforcement inspection, the VPP Manager must instruct the site to contact the appropriate Area Office (and the National Office if the fatality is on a National VPP site).

> ➤ The inspection will be limited to the specific issue of the unprogrammed activity. If citations are issued as a result of the inspection, a copy of the citation will be sent to the Regional VPP Manager. When an Area Office receives a referral from the VPP on-site team, the Area Director must notify the participant and the ASEC. Enforcement action may be initiated only after the ASEC approves such action. See CSP 03-01-003, *Voluntary Protection Programs (VPP): Policies and Procedures Manual*, April 18, 2008.

> ➤ The Area Director will send the VPP Manager a copy of any report resulting from an enforcement case.

2. Consultation.

a. Consultation Visit in Progress.

> ➤ If an on-site consultation visit is in progress, it will take priority over OSHA programmed inspections as outlined below. An on-site consultation visit will be considered "in progress" in relation to the working conditions, hazards, or situations covered by the visit from the beginning of the opening conference through the end of the correction due dates and any extensions thereof. If an

2-10

on-site consultation visit is already in progress, it will terminate when one of the following OSHA compliance inspections is about to take place:

- o Imminent danger inspection;
- o Fatality/catastrophe inspection;
- o Complaint inspections; and/or
- o Other critical inspections, as determined by the Assistant Secretary.

➢ "Other critical inspections" may include, but are not limited to, referrals as defined in Chapter 9, Complaint and Referral Processing. Following an evaluation of the hazards alleged in a referral, if the **Assistant Secretary** determines that enforcement action is required prior to the end of an abatement period established by the state consultation project, the consultation visit in progress shall be immediately terminated to allow for an enforcement inspection.

➢ For purposes of efficiency and expediency, an employer's worksite shall not be subject to concurrent consultation and enforcement-related visits. The following excerpts from CSP 02-00-002, *Consultation Policies and Procedures Manual, Chapter 7: Relationship to Enforcement*, January 18, 2008, clarify the interface between enforcement and consultation activity at the worksite:

- o Full Service On-site Consultation Visits. While a worksite is undergoing a full service on-site consultation visit for safety **and** health, programmed enforcement activity may not occur until after the end of the worksite's visit "In Progress" status.

- o Full Service Safety or Health On-site Consultation Visits. When an on-site consultation visit "in progress" is discipline-related, whether for safety **or** health, programmed enforcement activity may not proceed until after the end of the worksite's visit "In Progress" status and is limited to the discipline examined, safety or health.

- o Limited Service On-site Consultation Visits. If a worksite is undergoing a limited service on-site consultation visit, whether focused on a particular type of work process or a hazard, programmed enforcement activity may not proceed while the consultant is at the worksite. The re-scheduled enforcement activity must be limited to those areas that were not addressed by the scope of the consultative visit (posted List of Hazards).

b. Enforcement Follow-Up and Monitoring Inspections.

If an enforcement follow-up or monitoring inspection is scheduled while a worksite is undergoing an on-site consultation visit, the inspection shall not be deferred; however, its scope shall be limited to those areas required to be covered by the follow-up or monitoring inspection. In such instances, the consultant must halt the on-site visit until the enforcement inspection is completed. In the event OSHA issues a citation(s) as a result of the follow-up or monitoring inspection, an on-site consultation visit may not proceed until the citation(s) becomes a final order(s).

c. Enforcement Programmed Inspections.

On-site Consultation and 90-Day Deferral.

> If an establishment has requested an initial full-service comprehensive consultation visit for safety **and** health from the State OSHA On-site Consultation Program, and that visit has been scheduled by the State Program, a programmed inspection may be deferred for 90 calendar days from the date of the notification by the State Program to the Regional Office. No extension of the deferral beyond the 90 calendar days is possible, unless the consultation visit is "in progress."

> OSHA may, however, in exercising its authority to schedule inspections, assign a lower priority to worksites where consultation visits are scheduled.

  NOTE: See CSP 02-00-002, *Consultation Policies and Procedures Manual,* January 18, 2008, of Chapter 7, Relationship to Enforcement, for additional information.

3. Pre-Safety and Health Achievement Recognition Program (Pre-SHARP) Status.

   a. Those employers who do not meet the SHARP requirements, but who exhibit a reasonable promise of achieving agreed-upon milestones and time frames for SHARP participation, may be granted Pre-SHARP status. Pre-SHARP participants receive a full- service, comprehensive consultation visit that involves a complete safety and health hazard identification survey, including a comprehensive assessment of the worksite's safety and health management system.

   b. The deferral time frame recommended by the State Consultation Project Manager must not exceed a total of 18 months from the expiration of the latest hazard correction due date(s), including extensions. Upon achieving Pre-SHARP status, employers may be granted a deferral from OSHA programmed inspections. The following types of incidents can trigger an OSHA enforcement inspection at Pre-SHARP sites:

      > Imminent danger;
      > Fatality/catastrophe; and
      > Formal complaints.

4. Safety and Health Achievement Recognition Program (SHARP).

   SHARP is designed to provide support and incentives to those employers that implement and continuously improve effective safety and health management system(s) at their worksite. SHARP participants are exempted from OSHA programmed inspections, see §1908.7(b)(4).

   a. Duration of SHARP Status.

      All initial approvals of SHARP status will be for a period of up to two years, commencing with the date the Regional Office approves an employer's SHARP application. After the initial approval, all SHARP renewals will be for a period of up to three years.

   b. OSHA Inspection(s) at SHARP Worksites.

      As noted above, employers that meet all the requirements for SHARP status will have the names of their establishments deleted from OSHA's Programmed Inspection Schedule. However, pursuant to §1908.7(b)(4)(ii), the following types

of incidents can trigger an OSHA enforcement inspection at SHARP sites: imminent danger; fatality/catastrophe; or formal complaints.

NOTE: See CSP 02-00-002, *Consultation Policies and Procedures Manual, Chapter 8: OSHA's Safety and Health Achievement Recognition Program (SHARP) and Pre-SHARP*, January 18, 2008, for additional information.

5. OSHA Strategic Partnership Program (OSPP).

    a. Deferral from Programmed Inspection List for Non-Construction OSPs.

        ➢ New or renewed OSHA Strategic Partnerships (OSPs) will no longer include any programmed inspection deferral or deletion provisions. Only active VPP or SHARP worksites are eligible for this incentive. (See See CSP 03-02-003, *OSHA Strategic Partnership Program for Worker Safety and Health*, November 6, 2013, for additional information.)

    b. Programmed Inspection with a Limited Scope.

        ➢ For non-construction worksites, OSHA will no longer offer a limited scope inspection to an establishment operated by an OSHA partnering employer. However, a National partnership agreement may include a limited scope inspection where it can be clearly demonstrated to result in a more effective partnership. Therefore, any partnership agreement that contains a provision for a limited scope inspection must be approved by the Assistant Secretary in advance of the OSP's development based on a detailed statement of the benefits to the partnership. For inspections with limited scope, the workplace hazards to be addressed will be determined by OSHA with input from the partner(s). OSHA may expand the scope of the inspection based on information gathered during the inspection process.

        ➢ To gain a limited scope inspection as a benefit, the establishment must have undergone an on-site non-enforcement verification inspection within one year of the date of the programmed inspection.

    c. Deletion from Programmed Inspection List.

        ➢ OSPs signed or renewed after July 27, 2012 will no longer include any programmed inspection deferral or deletion provisions. Only cooperative worksites qualifying for VPP or SHARP are eligible for this benefit. In addition, new or renewed OSPs will not allow the use of OSHA's "Phone & Fax" procedures beyond the scope of those permitted in the FOM.

6. Alliances.

Unlike OSHA's OSP, VPP, and SHARP programs, Alliances do not require applications, data collection, verification, or evaluation. Alliances also do not offer incentives, such as focused inspections or inspection deferral, to their signatories.



| DIRECTIVE NUMBER: CPL 03-00-019 | EFFECTIVE DATE: 8/13/2015 |

SUBJECT: National Emphasis Program on Amputations

## ABSTRACT

**Purpose:** This Instruction, *National Emphasis Program on Amputations*, extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machinery and equipment hazards which are causing or likely to cause amputations.

**Scope:** OSHA-wide.

**References:** OSHA Instruction CPL 04-00-001, (CPL 2-0.102A) Procedures for Approval of Local Emphasis Programs, November 11, 1999.

**Cancellations:** OSHA Instruction CPL 03-00-003, National Emphasis Program on Amputations (10/27/2006)

**State Impact:** State adoption required in part. See paragraph V.

**Action Offices:** National, Regional, and Area Offices

**Originating Office:** Directorate of Enforcement Programs

**Contact:** Directorate of Enforcement Programs
Office of General Industry and Agricultural Enforcement
200 Constitution Avenue, NW, N3119
Washington, DC 20210
(202-693-1850)

By and Under the Authority of

Loren Sweatt
Deputy Assistant Secretary

EXHIBIT B

## Executive Summary

This Instruction extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machine and equipment hazards which are causing or likely to cause amputations. A detailed analysis of the targeted industries has been conducted through an executive summary to determine their continued coverage in this NEP. Data from general industry and the targeted industries suggest that amputation related inspections were being under-reported. The intent of this NEP is to target workplaces with machinery and equipment that cause (or are capable of causing) amputations, while maximizing the Agency's inspection resources. OSHA has committed to utilizing the code "AMPUTATE" to code and track these activities.

## Significant Changes

The original National Emphasis Program on Amputations, which was scheduled to expire on August 13, 2018, has been extended through September 30, 2019.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | PURPOSE | 1 |
| II. | SCOPE | 1 |
| III. | REFERENCES. | 1 |
| IV. | CANCELLATIONS | 2 |
| V. | EXPIRATION DATE | 2 |
| VI. | FEDERAL PROGRAM CHANGE | 2 |
| VII. | ACTION | 3 |
| VIII. | APPLICATION | 3 |
| IX. | BACKGROUND | 3 |
| X. | PROGRAM PROCEDURES | 3 |
| XI. | SCHEDULING AND RESOURCE ALLOCATION | 5 |
| XII. | COORDINATION | 6 |
| XIII. | TRAINING | 6 |
| XIV. | FEDERAL AGENCIES | 7 |
| XV. | PROGRAM EVALUATION | 7 |
| XVI. | RELATIONSHIP TO OTHER PROGRAMS. | 7 |
| XVII. | TARGETING METHODOLOGY. | 7 |
| XIX. | ESTABLISHMENT IDENTIFICATION | 10 |
| XX. | NEW RULE | 10 |

APPENDIX A: MACHINERY AND EQUIPMENT ................................................ A-1

APPENDIX B: RELATED ANSI /ASME STANDARDS ................................... B-1

APPENDIX C: AMPUTATIONS TARGETING METHODOLOGY ............... C-3

I.   Purpose. This instruction extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machine and equipment hazards which are causing or likely to cause amputations. *Amputation* is defined as a "traumatic loss of limb or other external body part. (http://www.bls.gov/iif/osh_oiics_2010_2_1_2.pdf).

Amputations include a part, such as a limb or appendage that has been severed, cut off, amputated (either completely or partially); fingertip amputation with or without bone loss; medical amputations resulting from irreparable damage; amputations of body parts that have since been reattached. Amputations do not include avulsions, enucleations, deglovings, scalping, severed ears, or broken or chipped teeth".

II.   Scope. This Instruction applies OSHA-wide.

III.   References.

    A.   OSHA Instruction CPL 04-00-001, November 10, 1999, Procedures for Approval of Local Emphasis Programs and Experimental Programs.

    B.   OSHA Standards 29 CFR 1910, Subpart J, General Environmental Controls, §1910.147, The Control of Hazardous Energy (Lockout/Tagout).

    C.   OSHA Standards 29 CFR 1910, Subpart O, Machinery and Machine Guarding.

    D.   OSHA Standards 29 CFR 1910, Subpart P, Hand and Portable Powered Tools & Other Hand-Held Equipment.

    E.   OSHA's Safety and Health Management Guidelines, 54 FR 3904, January 26, 1989.

    F.   OSHA Instruction CPL 02-00-025, January 4, 1995, Scheduling System for Programmed Inspections.

    G.   Executive Order 12196, Section 1-201.

    H.   OSHA Standards 29 CFR 1960.16, Compliance with OSHA Standards.

    I.   OSHA Instruction CSP 01-00-002, March 21, 2001, State Plan Policies and Procedures Manual (SPM).

    J.   OSHA Instruction CPL 02-00-150, April 22, 2011, Field Operations Manual (FOM).

    K.   OSHA Publication 3157, A Guide for Protecting Workers from Woodworking Hazards.

    L.   OSHA Safety and Health Topics Web Page, Machine Guarding. http://www.osha.gov/SLTC/machineguarding/index.html.

    M.   OSHA Safety and Health Topics Web Page, Control of Hazardous Energy, http://www.osha.gov/SLTC/controlhazardousenergy/index.html.

    N.   OSHA Instruction CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, and Appendix A, change effective January 30, 2015, or most recent version.

    O.   Bureau of Labor Statistics (BLS), Table R1, Number of Nonfatal Occupational Injuries and Illnesses Involving Days Away From Work by Industry and Selected Natures of Injury or Illness. (Calendar year 2009, 2010, 2011, 2012 and 2013)

http://www.bls.gov/news.release/pdf/osh2.pdf

P. Bureau of Labor Statistics (BLS), Table R5. http://www.bls.gov/iif/oshcdnew.htm Incidence Rates for Nonfatal Occupational Injuries and Illnesses by Involving Days Away From Work per 10,000 Full-Time Workers by Industry and Selected Natures of Injury or Illness, (Calendar year 2009, 2010, 2011, 2012 and 2013).

Q. Bureau of Labor Statistics (BLS), Table R25. Number of Nonfatal Occupational Injuries and Illnesses Involving Days Away From Work by Source of Injury or Illness and Selected Natures of Injury or Illness, (Calendar year 2009, 2010 and 2011, 2012 and 2013).

R. Executive Office of the President, Standard Industrial Classification Manual, 1987.

S. Executive Office of the President, North American Industry Classification System, United States, 1997.

T. Executive Office of the President, North American Industry Classification System, United States, 2002.

U. Executive Office of the President, North American Industry Classification System, United States, 2012

V. Occupational Safety and Health Act of 1970 [29 U.S.C. §654(a)(1 - 2)].

IV.   Cancellations. OSHA Instruction CPL 2-1.35; National Emphasis Program on Amputations, October 27, 2006.

V.    Expiration Date. This instruction will expire September 30, 2019.

VI.   Federal Program Change. This instruction describes a Federal Program change. Because of the significant nature of the policy changes contained in this Instruction, notice of intent regarding State adoption of an Amputations emphasis program in response to this Instruction is required. The notice should indicate whether the State's program is/will be identical to or different from the Federal.

If a State adopts an emphasis program on Amputations which differs from this Instruction, States may either post their policy on their State Plan's website and provide a link to OSHA or submit their policy to OSHA in electronic format, for posting on OSHA's website. An explanation of the differences must also be posted/submitted for posting. Where the State adopts an identical emphasis program on Amputations, a statement to that effect with appropriate State references may be sufficient for posting.

State Emphasis Programs: States are expected to keep their Regional Administrators informed of all State emphasis programs, whether the same as the Federal or different, and of experimental programs, local problem solving projects, etc. A list of the State's Local Emphasis Programs must be accessible to all interested parties through posting on the State's website or submission to OSHA for posting. Where State emphasis programs differ from the Federal, the assignment of appropriate IMIS identifier codes should be coordinated with the Directorate of Administrative Programs and the Regional Administrator.

2

VII.   Action. OSHA Regional Administrators (RAs), Area Directors (ADs) and National Office (NO) Directors must ensure that the policies and procedures set forth in this directive are followed. RAs must also inform State Consultation Program Managers and the State Plan State Designees in their Regions of the contents of this NEP and its supporting Outreach initiatives. RAs shall encourage Consultation Programs' involvement in this Agency-wide effort.

VIII.   Application. This instruction applies to general industry workplaces, where **any** machinery and equipment that are likely to cause amputations are present. Appendix A lists many of the machinery and equipment most often associated with amputations. Appendix B lists many National Consensus standards that provide guidance in complying with OSHA standards.

IX.   Background. The operation of machinery and equipment can be extremely dangerous. Injuries involving machinery and equipment often result in death or permanent disability. OSHA's more than 40-year inspection experience indicates that employee exposures to unguarded or inadequately guarded machinery and equipment, together with associated hazardous energy employee exposures during servicing and maintenance activities, occur in many workplaces. OSHA workplace requirements prescribe measures for the safe operation, servicing and maintenance of machinery and equipment. (See, e.g., 29 CFR 1910.147, 1910.212, 1910.213, 1910.217, and 1910.219.)

X.   Program Procedures. This NEP includes four major activities: outreach, targeting/selection, inspection, and program approval.

A.   Outreach. Each Regional and Area Office must implement a 90 day outreach program that supports the purpose of this NEP. During this period, the new industries added based on the targeting methodology and the use of NAICS codes will be offered outreach prior to inspection. Letters, news releases by local and national news organizations and trade magazines can assist with disseminating information about this NEP. Local hospitals, occupational health clinics, and local occupational physicians should be alerted via mail about occupational hazards that are commonly associated with amputations. Additionally, Outreach programs with employers, professional associations, and local unions may include meetings, training, education, speeches or other activities designed to involve labor and management in the identification and elimination of hazards associated with amputations and machinery. The Office of Communications will provide support to the Regional and Area Office. The outreach effort shall include employers with ten or fewer employees. In their discretion, Regional and Area Offices may disseminate outreach materials to employees, employers, professional associations, and local unions.

When appropriate, 21(d) Consultation Projects are encouraged to develop their own strategic approaches to address the need to reduce injuries and accidents related to machinery and other equipment associated with causing amputations.

B. Targeting/Site Selection. Inspections conducted under this NEP must be scheduled and conducted pursuant to the following priorities.

1. Area and Regional Offices shall follow the guidelines set forth in CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act. This appropriations act exempts an employer from an OSHA inspection that has 10 or fewer employees currently and at all times during the previous 12 months. Regardless of industry, establishments with 10 or fewer employees are not to be included on the program targeting list.

2. Area Offices (AOs) may add to the master list general industry establishments where amputation injuries or fatalities related to machinery and equipment have occurred in the five years preceding the effective date of this directive. If an AO does add to the master list, it must be re-randomized prior to use. The AO may return the modified list to the National Office for assignment of new random numbers or the AO may use the RANDBETWEEN function in Microsoft Excel to assign new random numbers. The AO local evidence of amputations may be based on OIS accident data, workers' compensation data, OSHA 300 data, NIOSH data, and other reliable sources of information (e.g., reports of amputations from hospital admissions, Emergency Medical Services, fire department, and police reports).

3. Deletions. Based on local knowledge, AOs may delete establishments that are not likely to have the targeted machinery and equipment, or firms known to be out of business, documenting the basis for such determinations. CSHOs will proceed with the programmed inspection where it has been determined that a new business is using the same plant and equipment of the previous business. Any establishment, other than those where amputations are known to have occurred, in the previous 5 years that has had a comprehensive safety inspection in the previous 24 months, will be deleted from the list.

Cycle Generation. A "Cycle" can be defined as a subset of establishments from the master list. Creating cycles from a randomized list allows the Area Office to use its enforcement resources more efficiently. Inspecting firms within a cycle in the order that makes the most efficient use of OSHA's resources does not diminish the plan's neutrality. The AO can schedule inspections in the following manners:

1. If the AO intend to inspect the entire master list, it can schedule the inspections in any order. If the AO uses this method, it must account (through inspections and deletions) for the entire list. The AO cannot inspect off a new list until the entire previous list is completed.

2. The AO can inspect the facilities in the random number order provided. If the AO uses this method, it does not need to complete the entire list.

3. The Area Office can create cycles by choosing a set number of establishments from the establishment list sorted in random number order. For example the AO can select the first ten establishments on the list sorted by ascending random number as a first cycle of 10 establishments. The AO can then inspect those establishments in any order, but must finish the cycle prior to beginning a second

4

cycle. Once the first cycle is complete, the office can select the next ten establishments from the randomized list as its second cycle.

C. Inspection Procedures. Inspections initiated under this NEP will be scheduled and conducted in accordance with provisions of the FOM, *Inspection Procedures*, except as noted below.

1. Once an inspection has been scheduled in the Area office and assigned for the identified establishment, the OSHA Public Inspection Data Web Page will be searched for the employer's citation and fatality/accident history prior to the opening conference.

2. At the opening conference, the CSHO will verify with the employer whether any of machinery and equipment in Appendix A or any other machinery and equipment that could cause amputations are present in the workplace. If any machinery and equipment associated with amputations are present in the workplace, the CSHO should exercise professional judgment in conducting an inspection of the machinery and equipment with particular attention to employee exposure to nip points, pinch points, shear points, cutting actions, and other point(s) of operation. The CSHO should consider and evaluate employee exposures during any of the following:

    ➢ Regular operation of the machine;
    ➢ Setup/threading/preparation for regular operation of the machine;
    ➢ Clearing jams or upset conditions;
    ➢ Making running adjustments while the machine is operating;
    ➢ Cleaning of the machine;
    ➢ Oiling or greasing of the machine or machine pans;
    ➢ Scheduled/unscheduled maintenance; and
    ➢ Locking out or tagging out.

3. OSHA 300 logs, and 301 incident reports for current and previous three years will be reviewed during the inspection in order to identify recorded amputations associated with machinery and equipment.

4. Inspections will be scheduled beginning with the current fiscal year, and will continue until further notice or until all establishments on the list have been inspected.

5. ADs, Supervisors, Team Leaders, and CSHOs should ensure that the requirements for Chapter 5. Case File Preparation and Documentation, (including significant cases) are being met.

E. Program Approval. Inspection programs that deviate from this NEP must be approved by the NOs. Directorate of Enforcement Programs.

XI. Scheduling and Resource Allocation. This is a National initiative which affects existing

5

inspection scheduling priorities, as indicated below.

A. Resources. RAs must ensure that adequate resources are designated for this NEP.

B. Planning. Each RA will report to the Director of Enforcement Programs the number of NEP inspections that are planned for each fiscal year.

C. Priority. Inspections conducted under this NEP may have a lower priority than inspections conducted under other targeting initiatives mandated by the Assistant Secretary; but have a higher priority than other scheduled programmed inspections from regular targeting initiatives. When possible, inspections conducted under this NEP will be combined with other programmed and unprogrammed inspections. This NEP may be combined with other existing initiatives, such as Local Emphasis Programs which identify targets on a different basis.

D. Voluntary Protection Program Sites (VPP). This National initiative exempts participating worksites. VPP sites will be removed from OSHA's programmed inspection lists of targeted sites, for the duration of approved participation in the VPP. The applicant worksite will be removed from the programmed inspection lists no more than 75 days prior to the commencement of its scheduled pre-approved onsite review. The site will remain off those lists until approved VPP participant has withdrawn or been terminated.

E. OSHA Strategic Partnership Programs (OSP). This NEP does not exempt Non-Construction worksites.

XII. Coordination.

A. National Office. This NEP will be coordinated in the Office of General Industry and Agricultural Enforcement (GIAE) in the Directorate of Enforcement Programs (DEP). Questions and comments should be coordinated through GIAE at 202-693-1850.

B. Field. Each RA will name a coordinator for this NEP.

XIII. Training. Because of the technical nature of some of these inspections and/or machinery and equipment, CSHOs who conduct inspections under this NEP, and consultation staff, must have had adequate training or experience with both general and specific machine guarding concepts and techniques as well as with hazardous energy control (lockout/tagout) program requirements.

A. The Directorate of Training and Education (DTE).
DTE provides training materials to CSHOs, consultation staff, and employers. Also, additional sessions of mechanical power press and machine guarding courses can be made available.

B. Additional Training.

1. On-the-Job Training. AD and supervisors must ensure that inexperienced CSHOs receive on-the-job training by accompanying experienced CSHOs during these NEP inspections.

2. Enforcement Issues. Continuing guidance regarding enforcement issues will be provided by OGIAE as new issues arise.

6

XIV.  Federal Agencies. This instruction describes a change that affects Federal agencies. Executive Order 12196, Section 1-201, and §1960.16, maintain that Federal agencies must follow the enforcement policy and procedures contained in this Directive.

XV.  Program Evaluation. AOs will collect data relevant to the effectiveness of this NEP and submit it to the RO. The RO, after summarizing the information, will forward it to the NO after the end of each fiscal year. At a minimum, the evaluation should respond to the requirements of CPL 04-00-001, Procedures for Approval of Local Emphasis Programs (LEPs).

XVI.  Relationship to Other Programs.

A.  Unprogrammed Inspections. If an unprogrammed (e.g., complaint, fatality and referral) inspection at an establishment coincides with respect to a programmed inspection under this NEP, the two inspections may be conducted either concurrently or separately, at the discretion of the Area Office. (See also XVII.C.)

B.  Special Emphasis Programs. If an establishment scheduled for inspection pursuant to this NEP is also scheduled for inspection to another NEP or LEP, the inspections may be conducted concurrently. CSHOs will apply applicable OIS codes to the inspection. The employer's number must also be recorded for each inspection. (See also Section XVIII.)

In the case of an establishment scheduled for inspection under both the Amputation initiative and a NEP/LEP, the scope of the inspection shall be limited to the safety and health issues targeted by the NEP/LEP program, as well as any machinery and equipment hazards which are causing or likely to cause amputations and are in plain view.

C.  Consultation Inspections. Consultations accomplished in support of this directive should input the following into the corresponding fields on the Request Form, the Visit Form (Form 30), and the Intervention Form (66); and in OIS Request, Visit and Compliance Assistance Activity; as applicable:

| Field Name | Input |
|---|---|
| National Emphasis | Amputate |

XVII.  Targeting Methodology.

The following updated NAICS Codes were derived through a progression of evaluating data from primarily four factors:

1. OSHA's Integrated Management and Information System (IMIS)
2. OSHA's Information System (OIS)
3. High Amputation rates from the Bureau of Labor and Statistics (BLS)
4. High Amputation numbers from BLS

See Appendix C: Amputations Targeting Methodology for further explanation of the

7

targeting methodology.

| 2012 NAICS | 2012 NAICS US Title |
|---|---|
| 311411 | Frozen Fruit, Juice, and Vegetable Manufacturing |
| 311412 | Frozen Specialty Food Manufacturing |
| 311511 | Fluid Milk Manufacturing |
| 311512 | Creamery Butter Manufacturing |
| 311513 | Cheese Manufacturing |
| 311514 | Dry, Condensed, and Evaporated Dairy Product Manufacturing |
| 311611 | Animal (except Poultry) Slaughtering |
| 311612 | Meat Processed from Carcasses |
| 311613 | Rendering and Meat Byproduct Processing |
| 311615 | Poultry Processing |
| 311811 | Retail Bakeries |
| 311812 | Commercial Bakeries |
| 311813 | Frozen Cakes, Pies, and Other Pastries Manufacturing |
| 311991 | Perishable Prepared Food Manufacturing |
| 311999 | All Other Miscellaneous Food Manufacturing |
| 321113 | Sawmills |
| 321114 | Wood Preservation |
| 321911 | Wood Window and Door Manufacturing |
| 321912 | Cut Stock, Resawing Lumber, and Planing |
| 321918 | Other Millwork (including Flooring) |
| 321920 | Wood Container and Pallet Manufacturing |
| 322211 | Corrugated and Solid Fiber Box Manufacturing |
| 322212 | Folding Paperboard Box Manufacturing |
| 322219 | Other Paperboard Container Manufacturing |
| 322220 | Paper Bag and Coated and Treated Paper Manufacturing |
| 323111 | Commercial Printing (except Screen and Books) |
| 323113 | Commercial Screen Printing |
| 323117 | Books Printing |
| 326111 | Plastics Bag and Pouch Manufacturing |
| 326112 | Plastics Packaging Film and Sheet (including Laminated) Manufacturing |
| 326113 | Unlaminated Plastics Film and Sheet (except Packaging) Manufacturing |
| 326150 | Urethane and Other Foam Product (except Polystyrene) Manufacturing |
| 326160 | Plastics Bottle Manufacturing |
| 327320 | Ready-Mix Concrete Manufacturing |
| 327390 | Other Concrete Product Manufacturing |
| 331491 | Nonferrous Metal (except Copper and Aluminum) Rolling, Drawing, and Extruding |

| | |
|---|---|
| 331492 | Secondary Smelting, Refining, and Alloying of Nonferrous Metal (except Copper |
| 332111 | Iron and Steel Forging |
| 332112 | Nonferrous Forging |
| 332114 | Custom Roll Forming |
| 332117 | Powder Metallurgy Part Manufacturing |
| 332119 | Metal Crown, Closure, and Other Metal Stamping (except Automotive) |
| 332311 | Prefabricated Metal Building and Component Manufacturing |
| 332312 | Fabricated Structural Metal Manufacturing |
| 332313 | Plate Work Manufacturing |
| 332321 | Metal Window and Door Manufacturing |
| 332322 | Sheet Metal Work Manufacturing |
| 332323 | Ornamental and Architectural Metal Work Manufacturing |
| 332710 | Machine Shops |
| 332991 | Ball and Roller Bearing Manufacturing |
| 332992 | Small Arms Ammunition Manufacturing |
| 332993 | Ammunition (except Small Arms) Manufacturing |
| 332994 | Small Arms, Ordnance, and Ordnance Accessories Manufacturing |
| 332996 | Fabricated Pipe and Pipe Fitting Manufacturing |
| 332999 | All Other Miscellaneous Fabricated Metal Product Manufacturing |
| 333111 | Farm Machinery and Equipment Manufacturing |
| 333112 | Lawn and Garden Tractor and Home Lawn and Garden Equipment Manufacturing |
| 333611 | Turbine and Turbine Generator Set Units Manufacturing |
| 333612 | Speed Changer, Industrial High-Speed Drive, and Gear Manufacturing |
| 333613 | Mechanical Power Transmission Equipment Manufacturing |
| 333618 | Other Engine Equipment Manufacturing |
| 334510 | Electromedical and Electrotherapeutic Apparatus Manufacturing |
| 334511 | Search, Detection, Navigation, Guidance, Aeronautical, and Nautical System an |
| 334512 | Automatic Environmental Control Manufacturing for Residential, Commercial, an |
| 334513 | Instruments and Related Products Manufacturing for Measuring, Displaying, and |
| 334514 | Totalizing Fluid Meter and Counting Device Manufacturing |
| 334515 | Instrument Manufacturing for Measuring and Testing Electricity and Electrical |
| 334516 | Analytical Laboratory Instrument Manufacturing |
| 334517 | Irradiation Apparatus Manufacturing |
| 334519 | Other Measuring and Controlling Device Manufacturing |
| 336211 | Motor Vehicle Body Manufacturing |
| 336212 | Truck Trailer Manufacturing |
| 336213 | Motor Home Manufacturing |
| 336214 | Travel Trailer and Camper Manufacturing |
| 337110 | Wood Kitchen Cabinet and Countertop Manufacturing |

| 337121 | Upholstered Household Furniture Manufacturing |
| 337122 | Nonupholstered Wood Household Furniture Manufacturing |
| 337124 | Metal Household Furniture Manufacturing |
| 337125 | Household Furniture (except Wood and Metal) Manufacturing |
| 337127 | Institutional Furniture Manufacturing |

XVIII.  Reporting, Recording and Tracking.

A. OIS Coding. The inspection must be marked as "Programmed Planned" as the Initiating type. "AMPUTATE" needs to be selected in the "National Emphasis Program" field and "AMPUTATE" must be selected as the "Primary Emphasis Program" (the Amputations inspections are being coded under the NEP for ease of tracking).

B. Complaint Inspections. Whenever an OSHA-7 or OIS Complaint UPA is completed by a Federal office and the applicable complaint alleges the presence of amputation hazards, complete the OSHA-7 or OIS Complaint UPA in the usual manner, and record "AMPUTATE" in the space in item 50 in IMIS. For OIS Complaint UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

C. Fatality and Catastrophe Inspections. Whenever an OSHA-36 or OIS Fat/Cat UPA is completed by a Federal office and the inspecting CSHO is able to identify at the site of the fatality/catastrophe the presence of amputation hazards, complete the OIS Fat/Cat UPA in the usual manner and record "AMPUTATE" in the space in item 36 in IMIS. For OIS Fat/Cat UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

D. Referral Inspections. Whenever an OSHA-90 or OIS Referral UPA is completed by a Federal office and the applicable referral case has amputation hazards as one of the subjects, complete the OSHA-90 or OIS Referral UPA in the usual manner and record "AMPUTATE" in the space in item 30 in IMIS. For OIS Referral UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

XIX.  Establishment Identification. If the DUNS number of an inspected establishment is known, it must be recorded in the appropriate field on the Establishment Detail Screen. The establishment Detail Screen can be accessed by selecting "Search Establishment" from the OIS-Navigation menu on the Home Page.

XX.  New Rule. Occupational Injury and Illness Recording and Reporting Requirements – NAICS Update and Reporting Revisions.

29 CFR Part 1904 has new requirements for reporting work-related fatalities, hospitalizations, amputations or losses of an eye. The new rule, which also updates the

list of employers partially exempt from OSHA record-keeping requirements, went into effect on Jan. 1, 2015, for workplaces under federal OSHA jurisdiction. (See 79 FR 56129, Occupational Injury and Illness Recording and Reporting Requirements – NAICS Update and Reporting Revisions, September 18, 2014.) As part of this NEP, if a report of amputation is received and the employers classified activity is one of the identified NAICS codes, AOs will conduct an inspection based on the Serious Injury Report (SIR) guidance; regardless of the outreach period.

There are two major changes to the former reporting requirements:

A. **First**, whereas the former regulation applied to employment incidents which resulted in one or more fatalities or hospitalizations of three or more employees. the regulation is expanded to require the reporting of **all** work related fatalities, **all** work-related in patient hospitalizations of **one** or **more** employees, **all** work-related amputations and all work-related losses of an eye.

B. **Second.** for any in-patient hospitalization, amputation. or eye loss employers must report the incident within 24 hours of learning about it. Fatalities must be reported within 8 hours of learning of the incident. .

Employers have three options for reporting the event:

Telephone the nearest OSHA Area Office during normal business hours.

Telephone the 24-hour OSHA hotline (1 800-321-OSHA or 1-800-321-6742).

OSHA is developing a new means of reporting events electronically. which will be released soon and accessible on OSHA's website.

## APPENDIX A:  MACHINERY AND EQUIPMENT

**(To be used for guidance/not inclusive)**

| 2012 (Table R-25*) Combined Amputation Sources |
| --- |
| **Sources of Amputations:  Machinery and Equipment** |
| Agricultural, garden machinery, bailers |
| Aerial lift platforms |
| Benders, Rollers and Shapers |
| Cranes (unspecified) |
| Casting Machinery |
| Conveyors – Belt, Chain, Live Roller, and Auger Screw Conveyors |
| Heating and cooking machinery and appliances |
| Drills – Stationary |
| Extruding Machinery |
| Food and Beverage Processing |
| Grinders, Abraders, and Meat Grinders |
| Material and personnel handling machinery |
| Metal, woodworking, and special material machinery |
| Milling Machines |
| Mowing machinery |
| Mixers, Blenders, Whippers, Slicers, and Food Beverage Processing Equipment |
| Packing, Wrapping, Bundling Machinery |
| Plastic Injection Molding Machinery |
| Press Brakes (All Types) |
| Presses (Mechanical, Hydraulic, and Pneumatic) |
| Printing Presses |
| Sawing Machinery - (Band, Table, Radial Arm Saws) |
| Shears (All Types) |

*Bureau of Labor Statistics (BLS) Table R25. Number of nonfatal occupational injuries and illnesses involving days away from work by source of injury or illness and selected natures of injury or illness, private industry. 2012 —

APPENDIX B:  RELATED ANSI /ASME STANDARDS

OSHA recognizes the value of national consensus standards in terms of useful guidance for employers and employees attempting to comply with specific OSHA standards.

OSHA's enforcement policy provides that a violation may be *de minmis* if an employer complies with a proposed standard or amendment or a consensus standard rather than with the standard in effect at the time of the inspection, and the employer's action clearly provides equal or greater employee protection.  See OSHA Instruction CPL 02-00-150, *Field Operations Manual*, Chapter VIII, Paragraph A (1) through A (4), April 22, 2011.  In applying this principle, OSHA takes heed of its rulemaking findings.

1.   ANSI B11.1- Mechanical Power Presses
2.   ANSI B11.2- Hydraulic Power Presses
3.   ANSI B11.3- Power Press Brakes
4.   ANSI B11.4- Shears
5.   ANSI B11.5- Ironworkers
6.   ANSI B11.6- Lathes
7.   ANSI B11.7- Cold Headers and Cold Formers
8.   ANSI B11.8- Drilling, Milling, and Boring Machines
9.   ANSI B11.9- Grinding Machinery
10.  ANSI B11.10- Metal Sawing Machines
11.  ANSI B11.11- Gear Cutting Machines
12.  ANSI B11.12- Roll-Forming and Roll-Bending Machines
13.  ANSI B11.14- Coil-Slitting Machines
14.  ANSI B11.15- Pipe, Tube, and Shape Bending Machines
15.  ANSI B11.16- Metal Powder Compacting Presses
16.  ANSI B11.17- Horizontal Hydraulic Extrusion Presses
17.  ANSI B11.18- Machinery and Machine Systems for Processing Strip, Sheet, or Plate From Coiled Configuration
18.  ANSI B11.19- Safeguarding When Referenced by the Other B11 Machine Tool Safety Standards
19.  ANSI B5.37- External Cylindrical Grinding Machines (Centerless)
20.  ANSI B5.42- External Cylindrical Grinding Machines (Universal)
21.  ANSI B65.1- Printing Press Systems
22.  ANSI B65.2- Safety Standard – Binding and Finishing Systems
23.  ANSI B65.3- Safety Standard for Guillotine Paper Cutters
24.  ANSI B7.1- Use, Care, and Protection of Abrasive Wheels
25.  ANSI B151.5- Plastic Film and Sheet Winding Equipment
26.  ANSI B151.20- Plastic Sheet Production Machinery
27.  ANSI B155.1- Packaging Machinery and Packaging-Related Converting Machinery
28.  ANSI B177.1- Three Roller Printing Ink Mills
29.  ANSI O1.1- Woodworking Machinery

B-1

30.   ANSI Z244.1- Control of Hazardous Energy - Lockout/Tagout and Alternative Methods
31.   ASME B5.52M- Mechanical Power Presses. General Purpose Single Point
32.   ASME B15.1- Mechanical Power Transmission Apparatus
33.   ASME B15.1A- Addenda to B15.1
34.   ASME BL5.1B- Addenda to B15.1
35.   ASME B20.1- Conveyors and Related Equipment, with Interpretations A and B
36.   ASME B20.1A and B20.1B- Addenda to B20.1
37.   ASME/CEMA 350- Screw Conveyors
38.   ASME/CEMA 401- Unit Handling Conveyors - Roller Conveyors - Non-Powered
39.   ASME/CEMA 402- Unit Handling Conveyors - Belt Conveyors
40.   ASME/CEMA 403- Unit Handling Conveyors - Belt Driven Live Roller Conveyors
41.   ASME/CEMA 404- Unit Handling Conveyors - Chain Driven Live Roller Conveyors
42.   ASME/CEMA 405- Packaging Handling Conveyors - Slant Conveyors

**NOTE: This appendix is not an inclusive list of all ANSI and ASME standards that are associated with hazardous machinery and equipment.**

## APPENDIX C: AMPUTATIONS TARGETING METHODOLOGY

NATIONAL DATA:

### Selection Process for Industries with Significant Inspection Histories (High IMIS[1] Numbers and OIS[2] Numbers).

Category 1.

1. OSHA selected five standards (29 CFR 1910.147, .212, .213, .217, and .219) that are generally recognized as being related to amputation hazards.
2. OSHA IMIS and OIS data covering fiscal years 2006-2014 identified those industries with 40 or more federal OSHA inspections with one or more violations of the standards listed in #1 above.
3. OSHA limited the range to the NAICS Sector 31-33, Manufacturing. This range encompasses all manufacturing operations and addresses amputation issues.
4. The process yielded 80 5-digit NAICS codes.

### Selection Process for Industries with High BLS Rates:

Category 2.

1. OSHA used the most recent five years of BLS Data (Calendar year 2009, 2010. 2011, 2012 and 2013) on incidence rates for nonfatal occupational injuries and illnesses involving days away from work per 10,000 full-time workers.
2. OSHA limited the range to the NAICS Sector 31-33, Manufacturing.
3. OSHA selected NAICS with BLS incidence rates of 10.0 or greater for amputations for any year.
4. The process yielded 10 5-digit NAICS codes.

### BLS Data Selection Process for Industries with High BLS Numbers:

Category 3.

1. OSHA used the most recent five years of BLS Data (Calendar year 2009, 2010, 2011, 2012 and 2013) on the number of amputations.
2. OSHA limited the range to the NAICS Sector 31-33, Manufacturing.
3. OSHA selected NAICS with BLS numbers of 50 or more amputations per year.
4. The process yielded 26-5 digit NAICS codes.

The 80 6-Digit NAICS codes that comprise the scope of this NEP have either High IMIS/OIS Numbers coupled with High BLS Amputation Rates or High IMIS/OIS Numbers coupled with High BLS Amputation Numbers.

There are 14 6-digit NAICS codes with high inspection counts and high BLS rates

---

1 IMIS- Integrated Management Information System. OSHA's database for enforcement data.
2 OIS – OSHA Information System

(categories 1 and 2 above).

- There are 76 6-digit NAICS codes with high inspection counts and high BLS case counts (categories 1 and 3 above).

- After eliminating the overlap between the two groups, the final total is 80 6- Digit NAICS codes.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace                          Case No. 8:19 MJ 138
located at and near

87725 State Highway 7
Ainsworth, Nebraska 69210

under the control or custody of

STEP FIVE, INC. d/b/a
DANIELS MANUFACTURING CO.

**ADMINISTRATIVE SEARCH WARRANT**

TO:   Jeff Funke
      Area Director
      Occupational Safety and Health Administration
      Omaha Area Office

Application having been made, which establishes that the requested inspection is

reasonable, based on a showing that Step Five, Inc. d/b/a Daniels Manufacturing Co.

located at 87725 State Highway 7, Ainsworth, Nebraska 69210, was chosen for

inspection on the basis of a general administrative plan, derived from neutral sources, for

the enforcement of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-

678, hereinafter referred to as the Act,

IT IS HEREBY ORDERED that, pursuant to section 8(a) of the Occupational

Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, YOU OR YOUR DULY

DESIGNATED REPRESENTATIVES ARE AUTHORIZED to enter the above-

described workplace during regular working hours or at other reasonable times, and to

make an inspection of farm equipment manufacturing operations under the custody and

control of Step Five, Inc. d/b/a Daniels Manufacturing Co., in order to determine compliance with the Act, and the rules and regulations promulgated pursuant thereto. The inspection shall focus on amputation hazards, including but not limited to, hazards associated with machinery and equipment that cause or are capable of causing amputations.

At the opening conference, the CSHO will verify with the employer whether any machinery and equipment that could cause amputations are present at the workplace.  If machinery and equipment that could cause amputations are present, the CSHO will conduct an inspection, with particular attention to employee exposure to nip points, pinch points, shear points, cutting actions, and other points of operation.  OSHA 300 logs and 301 incident reports for current and previous three years will also be reviewed during the inspection.  The inspection will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including the questioning privately of any employee or agent, and the taking of photographs, environmental samples, including the use of personal sampling equipment, and measurements, when necessary.  The Compliance Officer may expand the inspection beyond those machines if other hazards or violations are observed during the walk-around or are documented in the OSHA 300 logs.  Said inspection to include all relevant records, files and papers and all relevant workplaces or environments where work is performed by employees, and all pertinent conditions, and circumstances, structures, machines, apparatus, devices, equipment, materials, processes, controls, and facilities and all other things therein.

You are hereby directed not to disclose any information obtained during the inspection which is designated to be a trade secret as defined by 18 U.S.C. § 1905, except that such information may be disclosed to other officers or employees concerned with

2

carrying out the Act or when relevant in any proceeding under the Act.

A return shall be made to this Court showing that the inspection has been completed.  The inspection authorized herein shall be initiated within _10_ days, and a return shall be made to the Court within fourteen days following completion of the inspection.

DATED: _3/14/2019_

_____
MICHAEL D. NELSON
United States Magistrate Judge

3

RETURN OF SERVICE

I hereby certify that a copy of the within warrant was duly served on

_____, to the company named herein:


_____

_____

_____


RETURN

I declare under penalty of perjury that the inspection of the workplace described in

this warrant was made on _____.


Date:_____


By:                                         _____
                                                 BRIAN ELMORE
                                                 Compliance Officer
                                                 Occupational Safety and Health Administration
                                                 United States Department of Labor

4